Charles R. Whitworth and Estate of Sarah M. Whitworth, Charles R. Whitworth, Executor v. Commissioner.
Charles R. Whitworth & Estate of Sarah M. Whitworth v. Commissioner
Docket No. 28723.
United States Tax Court
1952 Tax Ct. Memo LEXIS 11; 11 T.C.M. (CCH) 1199; T.C.M. (RIA) 52353; December 12, 1952
*11 Whitworth was a partner in an old and well established accounting firm. The partnership agreement provided that upon the death, retirement or withdrawal of a partner his interest in the firm assets and business should be transferred to the continuing partners, that the partnership should not thereby be dissolved, and there should be paid to him or to his estate, in settlement of all claims against the continuing partners and the assets, the amount of his capital contribution, the balance of his current account and his proportionate share of profits for the current year. He was also to receive an additional amount to be determined by the administrative partners, which, in case of death or retirement at age 65, was to be equal to not less than his share of three years' earnings, past or future, and was to be paid over a six-year period out of distributable profits. Whitworth retired in 1943. In 1945 and 1947 these additional payments were made to Whitworth. Held: These payments were distributions of income to the retired partner, are taxable to him as ordinary income, and were not part of the purchase price of his interest in the partnership. Spaulding Glass, Esq., for the petitioners. Paul M. Stewart, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This proceeding involves income tax deficiencies for 1945 and 1947 in the respective amounts of $1,099.64 and $1,768.88 determined against Charles R. Whitworth and Sarah M. Whitworth. Sarah M. Whitworth died subsequent to the filing of the petition herein and Charles R. Whitworth, Executor *13 of the Estate of Sarah M. Whitworth, was substituted as a petitioner. The sole issue is whether the sum of $12,000 received by Charles R. Whitworth in each of the taxable years from Touche, Niven & Co. is ordinary income or capital gain. Other conceded adjustments may be taken into account in a computation under Rule 50. The joint returns of the taxpayers for 1945 and 1947 were filed with the collector of internal revenue at Chicago, Illinois. This case was consolidated for hearing, but not for opinion, with those of Francis J. Clowes, Docket No. 29262, and Carol F. Hall, et al., Docket No. 29345. A joint stipulation of facts and certain exhibits were filed. Findings of Fact The facts stipulated as facts in this proceeding are found accordingly and the pertinent exhibits are incorporated herein by reference. Petitioner Charles R. Whitworth was for many years a member of the partnership of Touche, Niven & Co., public accounts and auditors, hereinafter referred to as the firm. The firm kept its books and filed its partnership returns of income on the basis of fiscal years ended September 30. The firm was originally founded in 1900 by George A. Touch, of London, England, who later *14 changed his name to Touche, and John B. Niven of New York, New York. The firm later established offices in other cities of the United States and Canada with resident partner or resident managers. A partnership agreement signed in 1922 named six members as Senior Partners, George A. Touche and Andrew W. Tait of London; John B. Niven, Charles R. Whitworth, Henry E. Mendes, and Francis J. Clowes, in the United States. Other members were admitted to the partnership in later years. Whitworth entered the employ of the firm in 1913 and became a partner in 1919, at which time he made a capital contribution of $12,500. He remained a member of the firm until May 1, 1942. Clowes entered the employ of the firm in 1915 and became a partner in 1919. He made a capital contribution of $26,000. He ceased to be a partner as of September 30, 1946, having theretofore attained the age of 65 years. Victor H. Stempf became a member of the firm about 1922. He made a capital contribution of $22,000. He died on April 18, 1946, while still a partner. A new partnership agreement was signed in 1936, naming seventeen partners, including Carol F. Hall. Five of these were designated Administrative Partners - Niven, *15 Whitworth, Mendes, Clowes and Victor H. Stempf. The partnership agreement of 1936 provided, inter alia: ARTICLE IV FIRM NAME "Section 1. The firm name of Touche, Niven & Co. shall belong to and may be used by the partnership and shall not be sold or disposed of so long as the partnership shall continue in existence. "Upon the dissolution of the partnership or the termination thereof as provided in Article I hereof, the firm name shall become the property of the then surviving Administrative partners and may be disposed of in such manner and upon such terms as a majority in interest of the Administrative partners shall determine. "Section 2. In the event of the death, retirement, or withdrawal of any of the partners during the term of the partnership, the deceased, retiring or withdrawing partner shall have no interest in the firm name and shall have no right to receive any payment therefor. ARTICLE V MANAGEMENT AND CONTROL "Section 1. The business and affairs of the partnership shall be managed and controlled by the Administrative partners and all matters involving the general policy of the firm and its administration shall be decided by the Administrative partners. *16 Except as in this Agreement otherwise specifically provided, in the event of any difference of opinion among the Administrative partners any matter or question shall be decided by a majority in interest of the Administrative partners. * * *
ARTICLE VII STATED CAPITAL "Section 1. The stated capital of the partnership on the taking effect of this Agreement shall consist of the number of units of a stated value of $2500 each set forth in the attached Participation Schedule No. 1. The participations of the individual partners in the stated capital shall be in the same ratios as their participations in the distributable profits, and the stated capital at the time of taking effect of this Agreement shall be contributed by the partners in such ratios and to the amount of their respective participations therein, as set forth in the attached Participation Schedule No. 1 showing the ratio, number of units and amount of the participation of each partner. * * *
"Section 3. In the event of the death, retirement or withdrawal of any of the partners as hereinafter provided, there shall be repaid to such retiring or withdrawing partner or the legal representative of such deceased *17 partner, in the manner provided in Section 1 (c) of Article XI hereof, an amount equal to his paid-up participation in the stated capital at the date of his death, retirement or withdrawal. By decision of a majority in interest of the Administrative partners, the stated capital and the number of units therein may be decreased by the amount of such repayment, or the stated capital and the number of units therein may be readjusted to the former aggregate amount and number or to such other amount, number or stated value, as the Administrative partners may determine, by proportionate contributions from the remaining partners. If the stated capital is decreased by the repayment as aforesaid, the participations of the remaining partners in the remaining stated capital shall remain at the same number of units and the same amounts as before. * * *
ARTICLE X DEATH RETIREMENT OR WITHDRAWAL "Section 1. The death, retirement or withdrawal of any partner shall not dissolve the partnership between the other partners. "Section 2. Any partner may retire from the partnership at any time after the first day of October, 1936 upon giving six (6) calendar months prior notice in writing of his *18 intention so to do and his retirement shall be effective as at the date specified in such notice, notwithstanding that such date does not coincide with the end of a fiscal year. Such notice shall be deemed to be sufficient if sent by registered mail addressed to the firm at its principal office in New York City not less than six (6) calendar months prior to the date when such retirement is to become effective. * * *
"Section 6. Upon the death, retirement or withdrawal of any of the partners during the term of the partnership the interest of the deceased, retiring or withdrawing partner in the firm assets and business shall be and become vested in and transferred to the surviving or continuing partners in the proportion of their participations in the stated capital and distributable profits and the retiring or withdrawing partner or the legal representative of the deceased partner shall have no interest in or claim against the firm assets and business or the firm name except the right to receive the payments hereinafter provided for in Article XI hereof. * * *
ARTICLE XVII LIQUIDATION "Section 1. In the event that the partnership shall be dissolved or terminated by *19 the Administrative partners as in Article I provided, the surviving Administrative partners shall become the sole and exclusive owners of the firm name, books, records and files of the partnership and shall be entitled to continue the business without liquidation or to liquidate the business or to dispose of the business as a majority in interest of the Administrative partners may determine without accountability to any of the other partners except for the payment to such partners of the amounts due them under the provisions of Section 1 of Article XI hereof. The partnership shall not be deemed to be dissolved or terminated by the death, retirement or withdrawal of one or more of the partners." Article XI of the Agreement was amended by certain Amendatory Agreements in 1940 and 1943. As so amended it provided: ARTICLE XI PAYMENTS TO DECEASED, RETIRING OR WITHDRAWING PARTNER "Section 1. If any partner shall die, retire or withdraw for any reason whatsoever during the term of the partnership there shall be payable to such retiring or withdrawing partner or to the personal representative of such deceased partner the following payments, which shall be computed and paid in the *20 following manner and at the following times: "(a) An amount equal to the sum of (a) any loan by the partner to the firm, (b) any balance standing to his credit in his current account after crediting or debiting such account with all items not theretofore taken into the account but applicable thereto from the close of the preceding fiscal year to the date of his death, retirement or withdrawal, and (c) any other indebtedness due from the firm to him other than the sums due under paragraphs (b) and (c) hereof. Such balance shall be payable immediately. "(b) Such proportion of the distributable profits, as defined in Article II hereof, to which he would have been entitled for the then current fiscal year as the period from the beginning of such year to the date of death, retirement or withdrawal shall be to the whole of the then current fiscal year. Such sum shall be credited directly to the partner or his estate and shall be payable thereafter at such time or times and in such amounts during the ensuing fiscal year as a majority in interest of the Administrative partners may determine. "(c) An amount equal to his paid-up participation in the stated capital, as set forth in the *21 Participation Schedule in effect at the date of his death, retirement or withdrawal. Said sum shall be paid in six (6) equal semi-annual instalments, the first of which shall be payable at the expiration of six (6) months from the date of death, retirement or withdrawal, and the unpaid balance thereof shall bear interest at the rate of 5% from the date of death, retirement or withdrawal. The continuing or surviving partners shall have the privilege at any time and from time to time of accelerating the payment of the whole or any part or parts thereof prior to the due date at any time without notice or bonus. "The surviving or continuing partners shall have the right to offset against the payments to be made under paragraphs (a), (b) and (c) hereof any claims which the partnerships may have against such deceased, retiring or withdrawing partner arising out of the partnership or this Agreement. "Section 2. If any partner shall retire pursuant to Section 2 of Article X hereof after attaining the age of sixty-five years or shall die at any age, there shall be payable, in addition to the amounts hereinbefore provided in paragraphs (a), (b) and (c) of Section 1 of this Article XI, to *22 such retiring partner, or to the personal representatives of such deceased partner, out of distributable profits, such amount as may be determined by the decision of a majority in interest of the Administrative partners but in no event less than the smaller of the following: "(a) an amount equal to three (3) times the annual average of the sum of the salary plus the distributable profits of the partnership which such deceased or retiring partner received or was entitled to receive in respect of the business of the partnership carried on during the ten (10) fiscal years of the partnership next preceding the fiscal year in which such partner died or retired; or "(b) an amount equal to the sum of the salary plus the distributable profits of the partnership to which such deceased or retiring partner would have been entitled, if he had not died or retired and if his ratio in the profits of the partnership had not been altered, in respect of the business of the partnership carried on during the three (3) succeeding fiscal years of the partnership, including the fiscal year in which such partner died or retired, but for the purposes of this subdivision (b) the distributable profits shall *23 be determined after deducting current salaries and current interest on capital of any additional partners as well as those of the surviving or continuing partners. "The amount so determined to be payable shall be payable, without interest, in six (6) equal annual instalments, the first of which shall become payable at the expiration of one (1) year from the date of death or retirement or at such earlier date as a majority in interest of the Administrative partners may determine, but, unless the distributable profits then available shall not be sufficient, no annual instalment payment during each of the first three (3) years after such death or retirement shall be less than fifty per cent (50%) of the annual salary of such deceased or retired partner at the date of his death or retirement, or less than five thousand dollars ($5,000) per annum. "The payment under this Section 2 is intended as a distribution of income to the retiring partner or the estate of a deceased partner for a limited period subsequent to his retirement or death. * * *
"The provisions for the payment to be made under this Section 2 of this Article XI are limited to the cases specifically provided for *24 hereunder and do not apply to any partner who retires or withdraws at any other age or for any other cause. "Section 3. Notwithstanding any of the provisions of this Article XI, by decision of a majority in interest of the Administrative partners, there may be paid such sum of money in such instalments as they shall deem advisable to any partner retiring before he attains the age of sixty-five (65) years or to any other partner who may withdraw for any other reason. "Section 4. The amounts payable under this Article XI to a retiring or withdrawing partner and to the personal representative of a deceased partner shall be paid by the continuing or surviving partners and accepted by the retiring or withdrawing partner and by the personal representative of a deceased partner in full, final and complete settlement and satisfaction of all the claims of such retiring, withdrawing or deceased partner, as a partner, against the partnership, the surviving or continuing partners, and the assets of the partnership." Under date of October 27, 1939, Whitworth wrote the firm as follows: "I have hitherto expressed the view that I should like to retire from the firm when I reach the age of *25 sixty, which will occur on October 12, 1943. I have been giving further consideration to the matter and am convinced not only that I should retire from the firm on September 30, 1943 but that, in the meantime, I should be relieved of all administrative duties. I feel that the orderly administration of the business and affairs of the firm makes it desirable that I give notice at this time, in a formal manner, of my intention to retire and of my desire for a less active status in the meantime, so that my partners may plan for the future of the firm and act accordingly. Furthermore, in view of the fact that the partnership agreement makes specific provision for voluntary retirement of a partner only 'after attaining the age of sixty-five years' it would also be helpful to me to make definite arrangements with the firm at this time for my retirement and interim status so that I can plan my affairs accordingly. "I understand that it is agreeable to the firm that upon my retirement on September 30, 1943, the provisions of Section 2 of Article XI of the partnership agreement shall be applicable notwithstanding the fact that I shall not have then attained the age of sixty-five years; that *26 in the meantime, except that my aggregate participation in the profits of the firm, including salary, shall not exceed an average for the four years of $20,000.00 per annum, my present salary and interest in the distributable profits shall continue unchanged, but that my status shall be no longer that of an administrative partner. "Accordingly I hereby give notice of my intention to retire from the firm on September 30, 1943 and agree that my retirement shall be effective as of that date, with the understanding that this letter shall be deemed to be sufficient notice under the provisions of Section 2 of Article X, and that the provisions of Section 2 of Article XI shall be applicable to my retirement, and that I shall at that time surrender all of my interest in the firm and the firm name and assets, subject only to my right to receive the payments provided for in said Section 2 of Article XI, as well as the payments provided for in Section 1 of Article XI. It is also understood that upon my request you will accelerate the payments provided under Section 2 of Article XI so that the said payments shall be made in five instead of six years. It is, of course, understood that in case *27 of my death prior to September 30, 1943, my estate shall not be a partner in the firm and the provisions of Sections 1 and 2 of Article XI with respect to payments upon the death of a partner shall immediately be applicable. "From October 1, 1939 until my retirement I shall have a less active status as set forth above but nevertheless I shall retain my interest in the firm and shall be entitled to vote as a member of the firm in accordance with my interest in the distributable profits in connection with firm matters and until my actual retirement my present salary and participation in the distributable profits shall continue subject to the limitation set forth above. "If this is agreeable to you will you kindly note your acceptance on the duplicate hereof, and this letter and your acceptance shall constitute an agreement between the firm and myself effective as of the date of your acceptance." The firm noted acceptance of the terms of this letter. Whitworth was relieved of his duties as an Administrative Partner. On April 30, 1942, Whitworth retired from the partnership to accept a commission as Assistant Supervisor of Cost Estimate for the Signal Corps, United States Army, *28 in the Chicago District. He was then 59 years of age. After some interim correspondence the firm wrote Whitworth under date of November 27, 1942: "Although all arrangements as to your retirement from the firm as of May 1, 1942 have been heretofore informally agreed upon, it seems to us advisable to incorporate our agreement in a letter signed by the firm and approved by you. "This will confirm your retirement as a partner in the firm of Touche, Niven & Co. as of May 1, 1942. Notwithstanding your retirement, the financial arrangements agreed upon in our agreement of October 27, 1939 shall remain unchanged and accordingly you shall be entitled to receive the following payments: "1. For the fiscal years ending September 30, 1942 and September 30, 1943 you shall receive an amount equal to your salary and interest in the distributable profits of the firm under the partnership agreement the same as though you had remained a member of the firm, except that (a) as provided in our agreement of October 27, 1939, your agregate participation in the profits of the firm, including salary, shall not exceed an average for the four years ending September 30, 1943 of $20,000 per annum but (b) *29 any deficiency below $20,000 per annum in any of said four years shall be made good to the extent of any excess over $20,000 available from any prior or subsequent year of said four year period, the intention being that the average for the four year period shall be determined on a cumulative basis. "2. Notwithstanding the fact that you have not and will not have attained the age of sixty-five years on September 30, 1943, you shall be entitled to receive the retirement payments provided for in Section 2 of Article XI of the Partnership Agreement which shall be computed and be payable as if you had retired on September 30, 1943 except that, upon your request, we will accelerate the payments provided under Section 2 of Article XI so that the said payments shall be made in five instead of six years. "3. You shall be entitled to receive the payments provided for in Section 1 of Article XI of the Partnership Agreement but, notwithstanding your retirement as of May 1, 1942, said payments shall be determined and be payable as if you had retired on September 30, 1943. "4. It is understood that in case of your death prior to September 30, 1943 the provisions of Sections 1 and 2 of Article *30 XI with respect to payments upon the death of a partner shall be applicable immediately. "It is also understood that as of May 1, 1942 you have surrendered all of your interest in the firm and the firm name and assets subject only to your right to receive the payments above provided for. "We should appreciate it if you would note your approval on the enclosed duplicate hereof and this letter and your approval shall constitute an agreement between the firm and yourself." Whitworth noted his approval of this arrangement. After April 30, 1942, Whitworth performed no services for the firm. The firm paid Whitworth $20,405.17 during its fiscal year ended in 1942 and $20,000 during its fiscal year ended in 1943. Such amounts were reported as partners' distributable income in the firm's income tax information returns. In the firm's participation schedule effective October 1, 1941, Whitworth's annual salary was shown as $15,000 and his share of profits as 5/105ths. In the participation schedules effective October 1, 1942 and thereafter, Whitworth was not included as a participant in the salaries and profits. In each of the firm's fiscal years ended in 1944, 1945, 1946, 1947 and 1948, *31 the firm paid Whitworth $12,000. In addition to such payments the firm paid Whitworth the credit balance of $12,500 in his capital account, and $3,978.36 as his share of the cash surrender value of a policy on the life of John B. Niven. The premiums paid had been charged to Whitworth and other partners proportionately. These two payments were not deducted by the firm in computing distributable income nor were they reported as distributions of income to Whitworth. In the Whitworths' income tax returns for 1945 and 1946, the amount of $12,000 received in each year from the firm was treated as ordinary income. In their return for 1947 the similar payment for that year was treated as capital gain. Amended returns for 1945 and 1946 were filed and claims for refund made, based on the contention that these payments represented capital gains as being part of the purchase price of Whitworth's interest in the firm. The claims were rejected by the respondent and deficiencies were determined for 1945 and 1947. In 1947 the firm had 19 active partners, employed a staff of about 200 accountants and maintained offices in New York, Chicago, St. Louis, Minneapolis, Los Angeles, Detroit and Cleveland. *32 In the partnership return of income for the fiscal years ended in 1944, 1945 and 1946 the payments to Whitworth were treated as distributions of income and not as payments for acquisition of his interest in the firm. In the return for 1947 the amounts paid Whitworth, Clowes and the Stempf Estate were reported as ordinary income distributed to partners with the notation that Whitworth and Clowes were retired and that the amounts shown indicated their credits for the year. The firm possessed working papers concerning its clients' organizational history and background which were of value to the firm in that this information would not have to be obtained again if further accounting work was done for those clients. The capital contributed by the partners was a factor in producing income as it enabled the firm to carry payrolls of work in progress until the fees could be collected. The firm accounted for its income on a cash basis and did not take into account bills rendered but unpaid nor work in progress. Records were kept of work in progress at salary cost and of unpaid bills with a reserve for uncollectible accounts. The amounts thereof at the close of the fiscal years ended *33 in 1940 to 1946 were: Salary cost
Uncollected fee,
of work
Year
bills rendered
in progress
1940
$34,355
$ 85,449
1941
52,527
85,270
1942
61,986
68,916
1943
68,089
95,360
1944
67,757
68,654
1945
88,769
94,266
1946
81,486
119,911 As of April 30, 1942, when Whitworth withdrew to accept employment with the United States Army, these amounts were respectively, $72,195.74, and $263,600.19. By September 30, 1942, such fees had been collected or written off and such work in progress had been liquidated. During the fiscal years ended in 1940 to 1946 the firm had from 16 to 20 partners. The following shows the partnership income before partners' salaries, interest and retirement payments, the amount of partners' salaries for each of those fiscal years, and the partners' equity, according to the firm's statement of financial condition at the end of the fiscal year: Fiscal year
Partnership
Partners'
Partners'
ended in
Income
Salaries
Equity
1940
$288,944
$217,000
$245,581
1941
357,717
207,000
317,324
1942
503,583
209,038
431,625
1943
553,712
204,500
579,823
1944
610,439
213,500
598,248
1945
597,298
206,000
616,916
1946
720,608
244,083
597,142
*34 Opinion In the companion case of Carol F. Hall, et al., 19 T.C. -, promulgated December 11, 1952, we held that the payments made in 1947 by Touche, Niven & Co. to Whitworth, Clowes and the Estate of Victor H. Stempf, pursuant to the 1936 partnership agreement did not represent a part of the purchase price of the interests of the former partners, but were distributions of firm income to them and were deductible by the firm in computing the distributable income taxable to the continuing partners, of whom Carol F. Hall was one. It follows that in the present case the amounts distributed are ordinary income and not capital gain in the hands of the retired partner. The respondent did not err. Because of other conceded adjustments in the deficiency. Decision will be entered under Rule 50.